UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA (UE) and UE Local 123, Plaintiffs,

v.

WESTINGHOUSE ELECTRIC CORPORATION, Defendant.

Civ. A. No. 71–590.

United States District Court, W. D. Pennsylvania.

June 23, 1972.

Daniel M. Berger, Berger & Kapetan, Pittsburgh, Pa., for plaintiffs.

John G. Wayman, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

This is an action under § 301 of the Labor Management Relations Act (29

U.S.C. § 185) to compel compliance with the terms of a collective bargaining agreement. The collective bargaining agreement is that presently obtaining between the plaintiffs, United Electrical, Radio and Machine Workers of America ("UE") and UE Local 123 and the defendant, Westinghouse Electric Corporation ("Westinghouse"). UE Local 123 is the local labor organization of the UE which represented the production and maintenance workers employed by Westinghouse at its Verona, Virginia plant involved in this action. The plaintiffs and the defendant have stipulated to the relevant facts and have cross moved for summary judgment.

Section 7 of the collective bargaining agreement, which embodies the terms with which the plaintiffs seek to compel the defendant to comply, provides as follows:

"1. Dues Deduction Authorizations

For the duration of the Agreement, the Company shall deduct from the first pay of each month Union dues and promptly remit same to the respective Locals of the Union, for those employes in the bargaining units whose written and signed authorizations (on the following form), with all blank spaces properly filled in, are received by the Company. However, the Company shall, upon written notice from the Union, immediately stop dues checkoff from the members of any Local."

It provides further that it,

". . . shall apply only to the extent that its provisions are consistent with applicable State laws."

The authorization form, which is reprinted in Section 7, provides that the assignment and authorization are irrevocable,

". . . except that it may be revoked by my giving written notice to [Westinghouse] and the Local by individual registered mail postmarked either (a) during a period from the first October 24 to the first October 31, both inclusive, after the effective date of this authorization, (b) during the same period of each year thereafter, or (c) after the termination date of the National Agreement . . ."

During 1970 and 1971, at times other than between October 24 and October 31, both inclusive, or after the termination date of the National Agreement,[1] eleven members of the plaintiffs resigned from their membership. Contemporaneously, they notified Westinghouse of their resignations and of their concomitant desires to revoke their authorizations for the checkoff of their dues to the plaintiffs. Westinghouse honored the revocations, and has since made no deductions for their dues.

Virginia, the laws of which are the "applicable State laws", is a "right to work" state. Accordingly, it is not contested that the employees who withdrew from their membership in the plaintiffs had a right to do so. The issue is simply whether or not they had, additionally, a right to revoke their authorizations to the defendant to check off their dues.

The plaintiffs contend that disposition of this action is squarely controlled by SeaPak v. Industrial, Technical & Pro. AFL–CIO Emp., Div. of Nat. Mar. U., 300 F.Supp. 1197 (D.C.S.D.Ga.1969), aff'd 423 F.2d 1229 (5th Cir. 1970), aff'd 400 U.S. 985, 91 S.Ct. 452, 27 L. Ed.2d 434 (1971).[2] The issue in Sea-Pak, as stated by the district court, was "the right of the labor organization to insist upon continued weekly deductions of union dues from the payroll of three

1. The National Agreement does not expire until June 10, 1973.

2. The affirmance by the circuit court was *per curiam*, adopting the opinion of the district court, and the affirmance by the Supreme Court was without opinion.

employees after they had requested discontinuance of checkoff". Preliminarily, the court resolved that § 302(c) (4) of the Labor-Management Relations Act, which allows a checkoff as long as there is written authorization from the employee and the written authorization is not irrevocable for, *inter alia*, a period of more than one year, represents federal preemption of the field of legislation relating to checkoffs and, therefore, that Georgia's "right to work" laws, and specifically the provision thereof making checkoff authorizations unlawful unless revocable at the will of the employee, must yield to § 302(c) (4). The court then held that since the checkoff authorization involved was not irrevocable for a period of more than one year the labor organization favored by the authorization had a right to compel continued checkoff notwithstanding the employee's request. The court's premise, after examining the legislative history of § 302(c) (4), was that,

> "[C]heckoff authorizations irrevocable for one year after date do not amount to compulsory unionism as to employees who wish to withdraw from membership prior to that time."

If factually apposite, *SeaPak* is, indeed, squarely controlling.

The defendant contends that *SeaPak* is not apposite because whereas in that case the employees sought to discontinue the checkoff arrangement without also *withdrawing from union membership*, in this case the employees discontinued the checkoff arrangement only incident to their withdrawal from union membership. The defendant urges support for this contention in the reference in the court's statement of the issue to "discontinuance of checkoff". Although it is concededly not crystal clear from the district court's opinion, I think it more reasonable to read *SeaPak* as involving employees who also withdrew from union membership.

The central concern of the court was "compulsory unionism". If the employees had not withdrawm from union membership that would not have been a concern. At one point in the opinion, the court alluded to "compulsory 'membership' in the union", apparently an aspersion of "membership" in the form of dues-paying only. At another point, the court wrote of the "right of an employer to require employees to become 'or remain' members" of a union. And at still another point, the court concluded that irrevocable checkoff authorizations were not tantamount "to compulsory unionism as to employees *who wish to withdraw from membership*" prior to the expiration of their authorizations. Based primarily on these references in the opinion, I conclude that *SeaPak* involved employees who resigned from union membership and therefore that it is factually apposite,[3] and having been affirmed by the Supreme Court, is squarely controlling.

An appropriate Order granting the plaintiffs' motion for summary judgment and denying the defendant's motion for summary judgment will be entered.

---

3. Furthermore, it would seem that a controversy of any substance would far more likely arise over the right of an employee to revoke checkoff authorization incident to his desire to withdraw from union membership than incident simply to his desire to pay his dues directly to his union. In other words, an employee's objection to the *fact* of dues-paying rather than to the *manner* of dues-paying is more likely, and more likely, pragmatically, to supply a controversy requiring court resolution.